IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **MICHAEL A. LEWIS** )<br>Individually and on Behalf of All )<br>Others Similarly Situated )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>**NEANY, INC.** )<br> )<br>Defendant. )<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | Civil Action No.  TDC-15-2069 |

**PLAINTIFFS' UNCONTESTED MOTION FOR APPROVAL OF
ATTORNEY'S FEES AND REIMBURSEMENT OF LITIGATION COSTS**

This Fair Labor Standards Act ("FLSA") collective action matter was settled on March 9, 2016.  Pursuant to the parties' Stipulation and Proposed Settlement Agreement [Doc. 20, Exhibit #2], counsel for the Plaintiffs hereby file their motion seeking the Court's final approval of their fees and litigation costs incurred in this matter and the settlement of this matter.

The amount of attorney's fees and litigation costs has already been approved:  (i) by the Plaintiffs, (ii) by the Defendant and its counsel, and (iii) preliminarily by the Court in its Order Granting Preliminary Approval of FLSA Collective Action Settlement [Doc. 25].  Accordingly, the parties hereby seek final Court approval of the undersigned's attorney's fees and reimbursement of litigation costs as part of the settlement of this FLSA Collective Action.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

1.     <u>Commencement of the Case and the Bona Fide Disputes</u>.

The Named Plaintiff and putative plaintiffs (collectively referred to herein as the "Plaintiffs") in this case are represented by the law firm of Kleinbard LLC. Peter Rosenzweig is lead counsel for the Plaintiffs.[1] His investigation of this matter commenced more than one year ago on June 9, 2015 when he was contacted by an individual who was formerly employed by the Defendant. As the investigation progressed, it was determined that a potential collective action, instead of a single plaintiff case, would be warranted. The proposed collective action anticipated a nationwide class of current and former employees of the Defendant.

On July 15, 2015, the undersigned filed a Class Action Complaint and Collective Action Complaint for Violations of the Fair Labor Standards Act in this Court (the "Lawsuit") [Doc. 1].[2] At that time, there was one Named Plaintiff (Michael Lewis) who resided in Arizona. For his work with Defendant, he primarily worked out of Arizona. Defendant, however, is headquartered in Maryland. When Plaintiff Lewis chose the Kleinbard firm to be counsel in this matter, he executed a Contingency Fee Agreement/Letter of Representation (the "Contingency Fee Agreement"). In the Contingency Fee Agreement, in his capacity as the Class Representative he agreed to a standard contingency fee relationship which, in general, *provided that*; <u>only</u> in the event of a monetary recovery through a settlement or court award, the law firm would be entitled to reimbursement of litigation costs and a contingency fee of 33.3%.

---

[1]     The Affidavit of Lead Counsel for Plaintiffs, Peter Rosenzweig, in Support of Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs, attached hereto as Exhibit "A," is provided in support of this uncontested request for final approval of attorney's fees and litigation costs.

[2]     The Lawsuit alleged that Defendant failed to pay certain overtime compensation to "similarly situated" current and former UAV Logisticians.

2263497.1                                                     86907.003

Certainly, the geographic scope of the parties and the potential nationwide breadth of the class posed challenges. The Plaintiffs' argument in the Lawsuit was that their duties are routine and primarily mechanical in nature, and that they perform most of their work outside in the field. By contrast, the Defendant contended that the UAV Logisticians perform professional type duties on sophisticated and developing technology, and that they often exercise independent judgment and discretion in evaluating conditions and troubleshooting technical problems as they arise. Defendant denied all material allegations plead in the Lawsuit and asserted a number of affirmative defenses, *i.e.*, that the Plaintiffs are not entitled to overtime compensation for any work they performed outside the United States, and that, with respect to work performed in the United States, they are exempt from the FLSA's overtime requirements under various exemptions.

Needless to say, it was quite apparent at the outset that there were bona fide disputes between the parties concerning the classification of the UAV Logistician position and the entitlement to overtime compensation. Furthermore, the case involved disputed factual and legal issues with Plaintiffs living and, perhaps, working for Defendant throughout the United States and outside of the United States.

2.     Conciliation Efforts.

Considering these circumstances and what stood ahead of them in connection with the expenses and uncertainties inherent in litigation, the parties agreed to participate in an informal period of discovery to explore whether a resolution of their bona fide disputes could be reached. Accordingly, to stay the Lawsuit while a potential resolution was discussed amongst counsel, a Joint Motion to Stay Proceedings [Doc. 12] was filed on October 16, 2015. The Court granted that Motion and subsequent Motions which sought to stay the matter as the parties were making

3

progress with settlement discussions.

The parties conducted extensive discovery which included the Plaintiffs' presentation of interrogatories and document requests, the review of thousands of pages of timesheets and other relevant employment documents, and the exchange of their respective calculations of overtime hours worked and payroll documents underlying those calculations. All along, counsel for the parties continued to discuss and negotiate their respective positions relating to the bona fide disputes in this class/collective action case.

On March 9, 2016, eight months after the filing of the Lawsuit and following many months of focused settlement discussions and work to assess the strengths and weaknesses of the claims and defenses, the parties were able to reach an agreement to resolve the Lawsuit. Counsel for the parties agreed, in principle, to resolve the bona fide disputes and negotiated a settlement which settled and compromised fully all claims asserted with respect to the compensation of UAV Logisticians in the Lawsuit and all claims nationwide arising from or related to the Lawsuit or which have been or might have been asserted based on or arising out of any alleged acts, facts, transactions, occurrences, representations or omissions. The settlement was reached as a result of lengthy and detailed, arms-length settlement negotiations between counsel.

The parties agreed to a class-wide settlement for the total sum of $337,096.18. They further agreed that the settlement fund of $337,096.18 would be allocated amongst the Plaintiffs and the Kleinbard firm for reimbursement of its litigation costs and payment of its fees. More specifically, for purposes of this Uncontested Motion and as described in greater detail below, pursuant to the Contingency Fee Agreement executed by Plaintiff Lewis, the Kleinbard firm is entitled to reimbursement of the litigation costs and 33.3% of the settlement for its attorney's fees. As the parties discussed and agreed during their settlement negotiations, the Kleinbard firm

will not seek any fees over and above the $337,096.18 and will only be compensated from the settlement fund. Nor is the Kleinbard firm seeking any enhancements to its fee. The Defendant has already consented to a maximum fee of $112,253.02 (out of the $337,096.18) to the Kleinbard firm. It's important to highlight that the parties agreed the settlement would provide 100% relief to the Plaintiffs. Once that total was calculated, the parties agreed on a dollar figure for attorney's fees to be added onto the Plaintiffs' total, which resulted in the $337,096.18 settlement fund.

Immediately following the agreement between counsel, they spent countless hours together (along with their respective clients) negotiating and preparing a collective action settlement agreement document, a joint motion for approval of the FLSA settlement, a proposed order granting approval of the FLSA collective action settlement, and notice and claims forms to be sent to the class members advising of their eligibility to opt-in to the settlement. On March 28, 2016, those documents were filed with the Court as part of the Joint Motion for Order Certifying Plaintiff Class and Preliminarily Approving Stipulation and Settlement Agreement, Notice and Claim Form [Doc. 20]. Those documents contain detailed language exactly in line with the explanation above – that the Kleinbard firm would seek as fees only 33.3% of the settlement fund and that the Defendant would consent to that request and that amount. This calculus is fair and reasonable as the Defendant has certainty as to the maximum amount of its monetary exposure, and the Kleinbard firm and the class divide the available settlement fund based on their Contingency Fee Agreement. The Court has already preliminarily approved these terms in the Order Granting Preliminary Approval of FLSA Collective Action Settlement [Doc. 25].

86907.003

Accordingly, as part of the agreed-upon settlement and settlement procedure, the Kleinbard firm now seeks the Court's final approval of its fees and reimbursement of litigation costs pursuant to the Contingency Fee Agreement with the Plaintiffs.

## II.   STANDARD OF REVIEW FOR SETTLEMENTS AND APPROVAL OF ATTORNEY'S FEES PURSUANT TO THE FLSA

The standard of review for purposes of approval of the parties' settlement agreement in a FLSA case is less stringent than the review of a fee petition.   As Judge Quarles of this Court observed:

> There is a 'strong presumption in favor of finding a settlement fair.'  Because a settlement hearing is not a trial, the court's role is more 'balancing of likelihoods rather than an actual determination of the facts and law in passing upon . . . the proposed settlement.'

*Hoffman v. First Student, Inc.*, No. 06-1882, 2010 U.S. Dist. LEXIS 27329 (D. Md. March 23, 2010) (citing *Lomascolo v. Parsons Brinkerhoff, Inc.*, 2009 U.S. Dist. LEXIS 89136, at *27, 28 (E.D. Va. June 23, 2009)); *accord Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) ("'strong presumption' exists in favor of approval of settlement, and the bona fide dispute inquiry "must not be turned into a trial or a rehearsal of the trial.").[3]

In awarding attorney's fees under the FLSA,[4] the Court should begin by determining the lodestar; "the number of hours reasonably expended on litigation multiplied by a reasonable hourly rate." *Lopez v. Lawns 'R' Us*, 07-2979, 2008 U.S. Dist. LEXIS 112120, at *14-15 (D.

---

[3]    All cited by the July 16, 2015 Memorandum Opinion of District Judge Deborah K. Chasanow in *Eremah v. Autozone Stores, LLC, et al*, 2015 WL 4396700 (D. Md. July 16, 2015) which supports the approval of a Stipulation and Proposed Settlement Agreement in a FLSA collective action case.

[4]    As explained below, this is not a post-judgment fee petition in which the lodestar analysis would be applied.  Rather, the fee in the instant matter is the agreed-upon contingency fee available solely as a result of the successful settlement of this case where, in fact, the undersigned achieved 100% relief for the class members.  Still, however, the contingency fee sought here by the Kleinbard firm would satisfy the lodestar analysis as it is very fair and reasonable under the circumstances, and proportionate to the settlement fund amount and the monies available to all of the Plaintiffs.

Md. May 23, 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). The number of hours it was reasonable to devote to the case, and the reasonable hourly rates charged by personnel working on the case, are to be determined through consideration of the twelve Johnson factors, derived from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), and endorsed in *Hensley*, 461 U.S. at 430 n.3 and *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee or rates; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount in controversy and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*; *see Johnson*, 488 F.2d at 717-19. Additional circumstances may be taken into account which render the product of reasonable hours times reasonable rates an unduly high or low award of attorney's fees, such as the achievement of "exceptional success," which may justify an upward adjustment of the fee award. *Lopez*, 2008 U.S. Dist. LEXIS 112120, at *16 (*citing Blum v. Stenson*, 465 U.S. 886 (1984)); *Hensley*, 461 U.S. at 435.

In this case, the hours expended by Plaintiffs' counsel are reasonable, their rates are reasonable, and the final fee for which they seek approval of is reasonable. It is reasonable for Plaintiffs' counsel to seek one-third of the total settlement they procured with two-thirds going to the Plaintiffs.

### III.   THE DIVISION OF THE SETTLEMENT AMOUNT AMONG PLAINTIFFS AND BETWEEN PLAINTIFFS AND COUNSEL, AND THE TERMS OF PAYMENT, <u>ARE FAIR AND REASONABLE</u>

As explained above, at the beginning of this case and at the request of Plaintiff Lewis, the Kleinbard firm agreed to enter into a Contingency Fee Agreement.  The requested Contingency Fee Agreement specifically addressed the topics of attorney's fees and litigation costs with the following express language – language commonly found in standard contingency fee agreements:

-----------------------------------------------------------------

*Fees for Legal Services – Contingency Fee Arrangement*

*In consideration of the Firm's professional services rendered in the Litigation, you agree to pay a fee equal to thirty-three and one-third percent (33.3%) of the total gross sum recovered by way of settlement, court judgment or agency award, including any settlement or award of attorneys' fees.   The percentage is calculated on the total amount of any settlement or court judgment obtained less costs and disbursements and is based on pre-tax dollars.*

*In the event of a settlement or award of attorneys' fees, you agree that the Firm's fee will be the greater of:  (1) the settlement or award of attorneys' fees; or (2) the 33.3% fee identified in the prior paragraph.*

*In the event there is no recovery in the Litigation, you will not be obligated to pay any fee for the Firm's services.*

*Costs and Disbursements*

*The Firm shall advance all out-of-pocket costs and disbursements in the Litigation.   You are not directly responsible to pay any of the costs and disbursements of the Litigation.  The Firm's recovery of costs and disbursements is contingent upon a recovery being obtained.  If no recovery is obtained, you will owe nothing for fees, costs and disbursements.*

*Please note that the Firm reserves the right to recover fees for services and any outstanding balances for expenses from the settlement proceeds or other recovery, if any, in connection with the Litigation.  As a result, you agree that any settlement check or payment will be made payable to the Firm.   The Firm will then send you the balance of the settlement or other proceeds after appropriate adjustments for any outstanding fees and costs.  Similarly, you agree that in the*

*event of a settlement payable in installments, the Firm shall be entitled to reimbursement for all outstanding fees and costs from the first funds received.*

------------------------------------------------------------------

Plaintiff Lewis executed the Contingency Fee Agreement with this exact language and agreed to these terms. He has approved the settlement and now consents to the Kleinbard firm's recovery of attorney's fees and litigation costs as per these terms. And, further, the Defendant consents to the Kleinbard firm's recovery of attorney's fees and litigation costs as per these terms.

Moreover, the final 33.3% fee sought to be approved here is extremely fair and reasonable as it is equitably proportionate in light of the total settlement amount and the amount of settlement monies that were made available to the Plaintiffs. Specifically, as of the date of this Motion, for this federal court collective action case, the Kleinbard firm has $1,611.60 in litigation costs and expenses.[5] Further, 33.3% of $337,096.18 equals $112,253.02 – which is the only attorney's fee the Kleinbard firm now seeks approval of. This $112,253.02, however, does not all go to the Kleinbard firm. Because the Kleinbard firm is located in Philadelphia, Pennsylvania, it was required to retain a local counsel in Maryland for this case. As such, the Kleinbard firm has a separate agreement with its local counsel firm whereby it must compensate it for its work in this case. It has been agreed that the Kleinbard firm will pay its Maryland local counsel out of the contingency fee payment it receives. In total, approximately $11,225.30 must be taken from the $112,253.02 to pay the Maryland local counsel firm for the work it performed. That leaves an approximate net fee of $101,027.72 for the Kleinbard firm.

---

[5] As of the date of this Motion, the actual litigation costs and expenses are $1,555.20. However, to resolve the case the undersigned agreed to forego recovery of a portion of his firm's costs and cap the same at $1,611.60 as of March 9th when the agreement in principle was reached. The costs will further increase between the filing of this Motion and the final completion of this case (including the Final Approval Hearing scheduled for July 11, 2016). However, the undersigned has agreed to forego reimbursement of same.

Accordingly, in line with a standard contingency fee relationship, here the clients are eligible to receive two-thirds of the settlement fund and the law firms together are receiving one-third of the settlement fund.  There are 25 eligible members of the Plaintiff class in this matter.  To date, 19 members of the class (76%) have opted to participate in the settlement.  After fees and costs are reimbursed from the Settlement Fund, these participating Plaintiffs will share from this approximate $223,231.56 which has been made available to them through the settlement obtained by the Kleinbard firm.  *See Hoffman*, 2010 U.S. Dist. LEXIS 27329, at *11 (Under the FLSA and the terms of the lead class members' Agreement with counsel, Plaintiffs' counsel may recover one-third of the damages award.  Because this amount appropriately reflects the time spent and expenses incurred by Plaintiffs' counsel in this litigation, the fees and costs requested are reasonable and appropriate.).

## IV.    THE FEES SOUGHT TO BE APPROVED ARE REASONABLE AND PROPORTIONATE TO THE SETTLEMENT

As set forth above, the Kleinbard firm and its Maryland local counsel firm together are entitled to $112,253.02 in attorney's fees pursuant to the Contingency Fee Agreement.  Such an amount is reasonable given the circumstances of this case and the size of the settlement, and should be finally approved by the Court.  The fee to the Kleinbard firm is not the product of an hourly fee award, but rather, is the product of a contingency fee arrangement articulated in the Contingency Fee Agreement.  Ultimately, in any contingency fee arrangement, not only does the lawyer accept of the risk of no recovery, he accepts the risk of expending far more time in comparison to the contingency fee received.  Conversely, in such arrangements, there are instances in which the total amount of lawyer hours expended is small in comparison with the monetary result.  That is not the case here.

In the instant matter, over 260 work hours have been expended on behalf of the Plaintiffs, reaching an hourly billing total of close to 65,000.00.[6] The undersigned achieved an exceptional result for the Plaintiffs. He was able to recover for the Plaintiffs not only the full amount of their back wages, he was able to obtain a doubling of that amount. On that basis and as shown by the satisfaction of the Plaintiffs, the contingency fee sought by the Kleinbard firm is warranted.

Though the common lodestar analysis is not technically required here as this is <u>not</u> a post-judgment petition seeking the award of fees over and above the judgment amount, application of the lodestar factors, does in fact, confirm that the fee for which the Kleinbard firm seeks approval is fair and reasonable, especially insofar as it is proportionate to the size of the entire settlement fund and the amount of settlement money available to the settlement opt-in members.

To this end, typically, the twelve factors listed above comprise the appropriate standard in assessing the reasonableness of the hours and rates claimed. The 12-factor lodestar analysis is as follows:

1.      <u>The time and labor required.</u>

There was significant time and labor expended to investigate, commence, litigate, and settle this FLSA collective action case. As lead counsel, the Kleinbard firm had one partner, an associate lawyer and two paralegals assigned to the case for the duration. Additionally, the case required time and resources from a local counsel firm in Maryland (where the case was brought). Between the Kleinbard firm and its local counsel, over 260 hours have been expended on this

---

[6]      Though more time will be incurred for the Final Approval Hearing and final completion of this case in August 2016, the undersigned has agreed to forego recovery of those fees. The clock for fees stopped when the parties settled the case on March 9th.

engagement as of the filing of this request for approval and more hours will be required to monitor and finalize the settlement of this case.[7]

    2.    <u>The novelty and difficulty of the questions</u>.

In essence, the primary issue in this case was whether the Plaintiffs (the "Logisticians") were misclassified as "exempt" under the FLSA and applicable Arizona state wage and hour laws.[8]  In this case, there were numerous novel and difficult questions of both fact and law that affected the initial strategy, discovery, and ultimately the discussions of settlement.  These difficult issues included, but were not limited to: (a) the "exemption classification" issue, (b) the proper definition/parameters of the job category upon which the Plaintiffs based the purported class, and (c) the amount of time during the relevant look-back period that the Plaintiffs worked abroad and traveled to work assignments abroad.

    3.    <u>The level of skill required to perform the legal service properly</u>.

Counsel for the Plaintiffs possessed the skills and applicable knowledge necessary to handle this case properly from inception through settlement.  Lead counsel for the Plaintiffs, Peter Rosenzweig, is a 1994 *cum laude* graduate from the Schreyer Honors College at the Pennsylvania State University (graduated with Distinction and with Honors in Labor and Industrial Relations) and a 1997 *cum laude* graduate from the University of Miami School of Law.  He has close to nineteen years legal experience practicing exclusively in the area of labor and employment law in state and federal courts around the country.

---

[7]    The detailed time records/billing sheets of the Kleinbard firm and the local counsel firm consist of over twenty pages.  Should the Court desire to review them, they can be produced.  The undersigned attests to the amount of hours expended by the two firms on behalf of the Plaintiffs. *See* Exhibit "A."

[8]    The specific issues in this case and bona fide disputes are detailed in the parties' Joint Motion for Order Certifying Plaintiff Class and Preliminarily Approving Stipulation and Settlement Agreement, Notice and Claim Form [Doc. 20].

    

Throughout his legal career, he has handled wage/hour issues for both employees and has been lead counsel in numerous FLSA collective action cases, all of which have involved UAV/UAS companies similar to Defendant and all of which have been litigated in the U.S. District Court for the District of Maryland.  He is a frequent speaker on wage and hour issues and, thus, is customarily updated on the FLSA and any developments in its application, and wage/hour laws in general.

Edward Butkovitz is a 2010 *cum laude* graduate of Temple University Beasley School of Law, where he served on the *Temple Law Review* and was selected to the Moot Court Honor Society.  He frequently represents individuals and businesses in all types of litigation, with an emphasis on litigation involving business torts, contract disputes, and statutory claims.  He has litigated other wage/hour class actions on behalf of employers and employees.  Prior to joining Kleinbard, he served as a judicial law clerk for the Honorable Mark I. Bernstein in the Commerce Court of the First Judicial District of Pennsylvania.

4.    The opportunity costs.

There is a drastic opportunity cost in taking on the representation of a class action case with multiple putative class members dispersed throughout the country and abroad.  It is a massive undertaking with a significant drain on people power and firm resources.  The commitment to take on such a matter is made knowing that other opportunities will necessarily have to be declined, and so was the case here.  Certainly, a case with a large class of plaintiffs creates a significantly larger workload than a single plaintiff case.

The firms representing the Plaintiffs in this matter are small firms with limited numbers of attorneys, the vast majority of whom spend their time exclusively on matters for the firms'

existing clients.  There were various cases and representations that the firms could not accept as a result of having so many people and resources dedicated to this case.

     5.     <u>The customary fee</u>.

The contingency fee customarily utilized by these firms in contingency fee matters is 33.3% – the same as in the present matter.  The hourly fees customarily charged by the Kleinbard firm range from $290 - $655.  The undersigned's hourly fee is $465.  However, to specifically comply with the Rules and Guidelines for Determining Attorney's Fees in Certain Cases, Section 3, as set forth in Appendix B to the U.S. District Court of Maryland Local Rules, his hourly fee for this case has been reduced to $400.  Mr. Butkovitz's hourly fee is $295 and Mr. Bloom bills at a rate of $325/hour.

The fee for which the Kleinbard firm now seeks approval is based on the same percentage that the firm would be entitled to in any of its other contingency fee matters.

     6.     <u>The attorney's expectations at the outset of the litigation</u>.

As stated throughout this Motion, the Kleinbard firm accepted and handled this class action case on a contingency fee basis.  The contingency fee arrangement was requested by Plaintiff Lewis.  The firm bore a substantial risk of developing and carrying this case through a federal court trial, especially against a sophisticated Defendant and its counsel who are experienced in matters involving wage and hour laws.

     7.     <u>The time limitations imposed by the client or the circumstances</u>.

Albeit not a time limitation, a unique limitation in this case did exist which presented additional hurdles and logistics issues for the Kleinbard firm.  Specifically, due to the nature of their job, the Plaintiffs travel to and spend extended periods of time (sometimes up to one year) abroad working in Afghanistan, creating obvious distance and time-difference issues.  This made

meeting with and simply communicating with the Plaintiffs far more difficult and at times caused delays at crucial points during the litigation. Notwithstanding this unique obstacle, the firm was able to sufficiently communicate with the Plaintiffs to gather the necessary information and perform/provide the discovery required to bring this case to a successful resolution. Not to mention the fact that Plaintiff Lewis presently lives and worked for Defendant in Arizona.

      8.    <u>The amount involved and the results obtained</u>.

As set forth above, it was at all times impossible to articulate the exact amount of money at stake as any estimation would presume to know the conclusions of a future finder of fact. In consideration of such risk and uncertainty, Plaintiffs resolved this case and enjoyed significant success, agreeing to an available settlement fund of $337,096.18 for a 25 member class, and a settlement payment formula that could pay each settlement opt-in member the exact number of his/her overtime wages for the prior three year period and a doubling of that number for liquidated damages. The high settlement participation rate of 76% indicates the Plaintiffs' satisfaction with the results obtained by the Kleinbard firm through this case and the settlement.

      9.    <u>The experience, reputation, and ability of the attorneys</u>.

The experience of Plaintiffs' attorneys is set forth in detail above and fully justifies the reasonable contingency fee payment sought to be approved. Plaintiffs' attorneys are highly skilled, experienced, and well-known practitioners in the area of employment law, especially in connection with FLSA and wage/hour issues in the UAV/UAS industry. Additionally, the undersigned has been lead counsel in numerous FLSA collective action matters.

      10.    <u>The undesirability of the case</u>.

Many attorneys, even those who specialize in employment law, would decline representation in a FLSA collective action matter on a strict contingency fee basis with

potentially hundreds of unknown plaintiffs dispersed throughout the United States; many of whom could be overseas at any given time making the routine logistics of case investigation and discovery far more difficult. Nonetheless, the Kleinbard firm agreed to represent the Plaintiffs, navigated these cumbersome geographic and other issues, complex and novel substantive issues under the FLSA and applicable Arizona state wage and hour laws, and pursued Plaintiffs' claims to a successful settlement.

11.     <u>The nature and length of the professional relationship with the client</u>.

The Kleinbard firm, through the undersigned, has represented the Plaintiffs from the outset of the case. The relationship between the Kleinbard firm and Plaintiff Lewis spans as far back as more than one year. The attorneys at the Kleinbard firm worked extremely close with the Plaintiffs to explore their employment relationship with the Defendant and analyze all wage and hour issues under the federal and state wage and hour laws.

12.     <u>Awards in similar cases</u>.

Each case that the Kleinbard firm handles for a plaintiff client on a contingency fee basis, including FLSA collective action cases, requires a fee agreement providing a fee of 33.3% of any monetary recovery by way of a settlement or court award. This is the standard. In accord with that, the 33.3% of this settlement is fair and appropriate, and is exactly similar to the Kleinbard firm's fee in other FLSA collective action cases it has handled.

## V.     **CONCLUSION**

Plaintiff Lewis, as the Class Representative, specifically sought out the undersigned and the Kleinbard firm, and retained it to represent him and his similarly-situated Logisticians in a case against the Defendant for alleged unpaid overtime compensation. Plaintiff Lewis requested

that the representation be on a contingency fee basis and the firm agreed to that arrangement.  At the outset, Plaintiff Lewis and the firm agreed that in the event of a monetary recovery either through a settlement or a court award, the firm would be entitled to reimbursement of its litigation costs and a contingency fee equal to 33.3%.  They also agreed that the firm would receive no fee in the event that a monetary recovery was not obtained.

The Kleinbard firm took the massive risk of litigating this collective action matter with the possibility of no recovery.  After more than one year of work and significant devotion of labor and resources, the firm was able to secure a robust settlement for the Plaintiffs who were made whole for their losses and then some.  The success of the Kleinbard firm is evidenced by the extremely high settlement opt-in rate.  Accordingly, the Kleinbard firm in return asks only for the compensation the Plaintiffs agreed it would be paid in this event, *i.e.*, $1,611.60 in reimbursement of its litigation costs and the attorney's fee of 33.3% of $337,096.18, or $112,253.02.  The fee sought by the Kleinbard firm is reasonable.  The fee sought by the Kleinbard firm is proportionate to the total amount of settlement money available to the class members and is close to the hourly total of work performed on the case.

With the consent of the Defendant, the Kleinbard firm respectfully requests that the Court approve the reimbursement of its litigation costs and its contingency fee of $112,253.02.

Respectfully submitted,

KLEINBARD LLC

Dated:   June 27,  2016

Peter R. Rosenzweig, Esq.
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
(267) 443-4120

Jeffrey R. Bloom
(Bar No. 18013)
751 Rockville Pike, Suite 11-B
Rockville, MD 20852
Tel. (240) 499-8804
Cell (443) 691-7930
Fax (240) 235-4418

*Attorneys for Plaintiffs*

2263497.1                                              86907.003

## CERTIFICATE OF SERVICE

I, Peter R. Rosenzweig, Esq., counsel for Michael Lewis, Individually and on Behalf of All Others Similarly Situated, hereby certify that a true and correct copy of the foregoing *Plaintiffs' Uncontested Motion for Approval of Attorney's Fees and Reimbursement of Litigation Costs* was served on this 27th day of June, 2016, via email and ECF, on counsel for Defendant at the address listed below:

Michael J. Neary, Esq.
LERCH, EARLY & BREWER
3 Bethesda Metro Center
Suite 460
Bethesda, MD 20814

Peter R. Rosenzweig, Esq.